## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|                                         |     |                              |
|-----------------------------------------|-----|------------------------------|
| **LINDA WATTS,**                        | )   |                              |
| **Plaintiff,**                          | )   |                              |
|                                         | )   |                              |
| **v.**                                  | )   | **CIVIL ACTION NO. 2:22-00326-N** |
|                                         | )   |                              |
| **KILOLO KIJAKAZI,** *Acting*           | )   |                              |
| ***Commissioner of Social Security*,**  | )   |                              |
| **Defendant.**                          | )   |                              |

### MEMORANDUM OPINION AND ORDER

Linda Watts brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 14, 15, 16) and those portions of the certified transcript of the administrative record (Doc. 13) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73,

## I.   *Procedural Background*

Watts filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on March 26, 2020. After the applications were denied initially, and again on reconsideration, Watts requested, and on November 16, 2021, received, a hearing on her applications with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. On February 8, 2022, the ALJ issued an unfavorable decision on Watts's applications, finding her not entitled to benefits. (*See* Doc. 13, PageID.54-73).

The Commissioner's decision on Watts's applications became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on August 3, 2022. (*See id.*, PageID.45-49). Watts subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's second final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such

---

and S.D. Ala. GenLR 73. (*See* Docs. 9, 10).

With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs. 18, 19).

decision or within such further time as the Commissioner of Social Security may allow.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the

materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing]

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law,

---

it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) *(*"Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited.")*Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the

same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th

Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Watts met the applicable insured status requirements for DIB through December 31, 2024, and that she had not engaged in substantial gainful activity since the alleged disability onset date of October 1, 2019.[7] (Doc. 13, PageID.60). At Step Two,[8] the ALJ determined that Watts had the following

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d

severe impairments: peripheral neuropathy; dysfunction-major joints; chronic kidney disease; cataract; retinal disorder; obesity; and diabetes mellitus. (Doc. 13, PageID.60). At Step Three,[9] the ALJ found that Watts did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.60-61).

At Step Four,[10] the ALJ determined that Watts had the residual functional

---

1245, 1265 (11th Cir. 2019) (per curiam) (citation omitted) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[11] except for the following additional limitations: [she] can lift and/or

---

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for 6 hours in an 8 hour workday; sit with normal breaks for a total of 6 hours on a sustained basis in an 8 hour workday;…push and pull the same as for lifting and carrying[;] can frequently climb ramps and stairs; [can] never climb ladders, ropes, and scaffolds; [can] frequently stoop, kneel, crouch, and crawl[;] can occasionally overhead reach with her right upper extremity and frequently frontal and lateral reach with her right upper extremity[;] has limited far and near acuity in both eyes[;] is limited to fine visual discrimination at a distance of 5 feet or less[;] can frequently read magazine or newspaper size print and can avoid common hazards in the workplace such as objects in a pathway, or doors ajar[;] can have occasional exposure to extreme cold and extreme heat, and occasional exposure to vibration[; and] must avoid all exposure to dangerous machinery and unprotected heights." (Doc. 13, PageID.62-65).

Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Watts was able to perform past relevant work as a parts inspector. (Doc. 13, PageID.65). However, as an alternative finding, the ALJ proceeded to Step Five and, after considering additional testimony from the vocational expert, found that there exist a significant number of other jobs in the national economy as a garment sorter

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

(~225,000 jobs nationally), ticket taker (~114,000 jobs nationally), and office helper (~93,000 jobs nationally) that Watts could perform given her RFC, age, education, and work experience. (*Id.*, PageID.65-66). Thus, the ALJ found that Watts was not "disabled" under the Social Security Act from the alleged disability onset date through the date of the ALJ's decision. (*Id.*, PageID.66-67).

## IV.   *Analysis*

### a.   **Vision Impairments**

Watts's first claim of error is that the ALJ did not point to sufficient evidence in the record to discredit Watts's subjective testimony regarding the effects of her vision impairments. No reversible error has been shown.

As Watts's brief notes, the Commissioner must "apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). A claimant's "statements about...pain or other symptoms will not alone establish [disability]." 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, "[t]here must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of...pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." *Id.*

"In evaluating the intensity and persistence of…symptoms, including pain, [the Commissioner] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]. [The Commissioner] will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how…symptoms affect [the] ability to work." *Id. See also* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider…medical opinions…"). It is well established that "the claimant bears the burden of proving that he is disabled, and, consequently,…is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. However, the Commissioner cannot reject a claimant's testimony regarding the intensity and persistence of symptoms based *solely* on a lack of corroborating objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms

or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements…Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms."); *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984) (per curiam) ("In this circuit the ALJ must recognize that pain alone can be disabling, even when there is no objective medical evidence to support the claimant's testimony about pain. The ALJ improperly required objective medical evidence to support Todd's claim of disabling pain." (citation omitted)); *Snyder v. Comm'r of Soc. Sec.*, 330 F. App'x 843, 848 (11th Cir. 2009) (per curiam) (unpublished) ("[T]he ALJ cannot discredit Snyder's testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence.").

Here, the ALJ's decision discussed the objective medical evidence regarding Watts' vision impairments, consisting of treatment notes spanning from October 7, 20219 to June 2021. (*See* Doc. 13, PageID.64). While the record documents Watts's consistent complaints by Watts of blurry vision, eye floaters, etc., the ALJ noted that a June 2021 vision examination found that she had 20/40 vision in both eyes with correction (and only a slight worsening without correction, to 20/50, in the right eye) (*see id.*, PageID.1242), which indicates only mild visual impairment and does not support her claims of severe difficulty with reading and seeing objections, including her claims that she can only read for short periods with reading glasses or a magnifier.  *See* (https://www.aoa.org/healthy-eyes/caring-for-your-eyes/low-vision-

and-vision-rehab?sso=y (under Word Health Organization classifications, "20/30 to 20/60…is considered mild vision loss, or near-normal vision") (last visited Sept. 27, 2023)); https://kyeye.com/near-or-far-what-does-20-40-vision-mean/ ("A person with 20/40 vision sees things at 20 feet that most people who don't need vision correction can see at 40 feet. This means that they are nearsighted, but only slightly. A person with 20/40 vision may or may not need eyeglasses or contacts…") (last visited Sept. 27, 2023)).[13] The physician who performed that examination also opined that Watts's vision was adequate for driving under all conditions, and that she did not require corrective lenses to drive (*see* Doc. 13, PageID.1242), which undermines Watts's Function Report claim that she drives "very little" because she "can't see different vision." (*Id.*, PageID.398).

Unlike in *Snyder*, 330 F. App'x 843, to which Watts compares this case, the ALJ here did not reject Watts's subjective testimony based solely on a lack of substantiating medical evidence, but rather relied on objective medical evidence that affirmatively undermined her testimony of greater visual limitations. Watts points to no other evidence in the record bolstering the more extreme vision limitations she claimed in her subjective testimony and reports.[14]

---

[13] Watts's brief claims that the 20/40 measure "is not relevant to [her] near visual acuity, or to her retinal condition." (Doc. 15, PageID.1253). Watts provides no further explanation or authority to support this bald statement, nor is its significance clear regarding the ultimate issue of whether the ALJ reversibly erred. *See Winschel*, 631 F.3d at 1178 (district court may not substitute its judgment of the evidence for the ALJ's).

[14] The mere fact that Watts was diagnosed with various vision-affecting impairments "does not reveal the extent to which they limit her ability to work or

### b.      Severe Impairment of "Dysfunction-Major Joints"

At Step Two, the ALJ found that one of Watts's severe impairments was "dysfunction-major joints." Watts's second, and last, claim of error is that the ALJ "did not at any point identify which joint or joints were included in this impairment[,]" which led to the ALJ "fail[ing] to properly identify the limitations caused by the dysfunction." (Doc. 15, PageID.1254-1255). Again, no reversible error has been shown.

It should be noted that Watts's brief repeatedly misidentifies this impairment as "dysfunction – major joint," while the ALJ's decision refers to "joint<u>s</u>." (*Compare*

---

undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *See also McCruter*, 791 F.2d at 1547 ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

*Powell v. Astrue*, 250 F. App'x 960 (11th Cir. 2007) (per curiam) (unpublished), also cited by Watts, is also distinguishable. There, the ALJ, in rejecting the claimant's subjective complaints, "wrote that '[t]he claimant testified that her bowel incontinence precludes her from walking, standing, or doing any physical activities.'" 250 F. App' at 964. The reviewing panel found that this "mischaracterized" the claimant's testimony—rather than making such "sweeping claims" as the ALJ found, the claimant's testimony provided "a more nuanced account of [her] limitations…" *Id.* While the ALJ here certainly could have discussed Watts's subjective complaints regarding her vision in more detail, there is no indication that the ALJ affirmatively misrepresented any of her testimony.

More importantly, in *Powell*, the panel found that the only two pieces of evidence the ALJ cited to discredit the claimant's testimony did not directly contradict it—her testimony that she could walk on a treadmill each day, and a two-sentence notation in a doctor's report stating that the claimant was "without pain in terms of her right lower quadrant" and was "progressing satisfactorily." 250 F. App'x at 964. The court also pointed to other medical reports that corroborated the claimant's subjective testimony regarding her incontinence. *Id.* Here, on the other hand, the ALJ here objective evidence that was directly relevant to, and failed to support, the claimed severity of Watts's vision impairments, and Watts has cited no other record evidence supporting greater limitations.

*id.*, PageID.1254, *with* Doc. 13, PageID.60). Thus, it is clear the ALJ found that Watts suffered from severe impairments at multiple major joints, not just one as Watts argues. Regardless, the ALJ's failure to describe this severe impairment with greater particularity is harmless error at most.

Step Two is "a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). *See also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied…"). "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588. Therefore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (unpublished).

An ALJ's harmless errors do not warrant reversal of a final decision. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). An "error is harmless if it did not affect the judge's ultimate determination[,]" *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) (citing *Diorio*, 721 F.2d at 728); *accord Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per

curiam) (unpublished), and the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). Since, again, an ALJ need find only one severe impairment to proceed past Step Two, any error in not classifying additional impairments as severe has no effect on the ultimate outcome of the decision, so long as the ALJ, based on substantial evidence, accounts for the "true" limiting effects of those impairments at the later steps of the sequential evaluation. As the Commissioner correctly points out, the Eleventh Circuit has repeatedly held that any error in not finding additional severe impairments at Step Two is harmless, so long as the ALJ finds at least one,[15] and considers all of the claimant's medically

---

[15] *See e.g.*, *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 992–93 (11th Cir. 2018) (per curiam) (unpublished) ("Ball contends that the ALJ erred at the second step of the five-step analysis because she found that Ball's depression was not a severe impairment. But step two of the test 'acts as a filter' in that the 'finding of any severe impairment ... is enough to satisfy the requirement of step two' and allow the ALJ to proceed to step three. <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987). As a result, even if the ALJ should have determined that Ball's depression was severe, any error was harmless because the ALJ determined that her compression fracture, spur formation, and lumbar fractures were severe, which allowed the ALJ to move on to step three."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were

determinable impairments, both severe and non-severe, at the later steps of the sequential evaluation.[16]

As the ALJ found additional severe impairments at Step Two and proceeded

---

severe impairments, allowing him to move onto step three of the test."); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (per curiam) (unpublished) ("[T]he finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly*, 382 F. App'x at 824–25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").

[16] *See Schink*, 935 F.3d at 1268 ("Our conclusion that substantial evidence does not support the ALJ's finding that Schink's mental impairments were non-severe … could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence. Here, though, the ALJ's RFC assessment was limited to Schink's physical abilities and impairments and erroneously omitted his mental ones. As a result, we cannot say that the erroneous finding of non-severity was harmless."); *Ball*, 714 F. App'x at 993 ("Ball's argument that the purported error [in failing to find additional severe impairments in step two] affected the ALJ's residual functional capacity analysis in step four fails because the ALJ considered all of Ball's symptoms and impairments (including her alleged depression), her medical records and testimony, and all opinion evidence (including Dr. Whitlock's opinion) in determining her residual functional capacity."); *Tuggerson-Brown*, 572 F. App'x at 951 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.").

to the remaining steps of the sequential evaluation, any error in failing to further define "dysfunction – major joints" is harmless, and Watts has failed to persuade the undersigned that the ALJ did not consider all of her joint impairments at the later steps. Watts claims that the record evidence shows dysfunction in the following major joints: the right shoulder, right knee, and the back. However, she concedes that the RFC accommodates her right shoulder dysfunction, and the only evidence of back pain that she cites are treatment notes from April 2009 to March 9, 2011, approximately a decade before her alleged disability onset date of October 1, 2019. (*See* Doc. 15, PageID.1255). As for her right knee dysfunction, Watts cites the following:

> On November 6, 2020, she was treated at Doc in a Bus for diabetes and right knee pain; an x-ray was ordered. (Doc. 13, PageID.1234). That x-ray dated November 9, 2020, showed small osteophytes and hypertrophic changes to the anterior patella. (Doc. 13, PageID.1107). On December 4, 2020, her knee pain continued and she was diagnosed with osteoarthritis. (Doc. 13, PageID.1233). On January 19, 2021, she was prescribed Mobic and Flexeril. (Doc. 13, PageID.1232). On March 19, 2021, she was prescribed Diclofenac. (Doc. 13, PageID.1229).

(Doc. 15, PageID.1254-1255).

However, these bare diagnoses do not reveal the extent to which they limit her ability to work. *See Moore*, 405 F.3d at 1213 n.6. Moreover, the ALJ discussed many of these records in the decision and noted the unremarkable findings that accompanied these diagnoses—"no significant arthritic changes;" normal muscle tone muscle strength, and gait; "no edema of the legs." (Doc. 13, PageID.63). While Watts fails to explain the significance of the medications she cites, the fact that she cites no

evidence of further knee pain after they were prescribed suggests that they benefited her right knee dysfunction. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation omitted)). While Watts argues her knee pain would affect her ability to stoop, kneel, crouch, and crawl, she cites no evidence that clearly contradicts the ALJ's RFC finding on those issues.

No reversible error having been shown, [17] the Court finds that the Commissioner's final decision denying Watts's applications for benefits is due to be **AFFIRMED**.

## V.    *Conclusion & Order*

In accordance with the foregoing analysis, the Commissioner's final decision denying Watts's March 26, 2020 DIB and SSI applications, is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **28th** day of **September 2023**.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**

---

[17] Watts devotes approximately 3 pages of her 10-page brief to substantive argument, with the rest taken up by discussions of general standards of review and a detailed discussion of the record evidence. Simply recounting evidence, without linking it to any particular argument, is not sufficient to raise a claim of error. Thus, any claim of error not expressly addressed herein is deemed forfeited as insufficiently raised. *See* n.4, *supra*.